# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA MURCH, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br>　v.<br><br>QUEST HEALTH SOLUTIONS, LLC<br><br>　　　　　　　　Defendant. | Case No. 24-5478<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Plaintiff Jessica Murch ("Murch"), by her undersigned counsel, for this class action complaint against Quest Health Solutions, LLC, as well as its present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

### I.　INTRODUCTION

1.　As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.　The Plaintiff Jessica Murch alleges that Quest Health Solutions, LLC made unsolicited pre-recorded telemarketing calls to her and others without their prior express consent.

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, she sues on behalf of a proposed nationwide class of other persons who received similar calls.

4. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## II.  PARTIES

5. Plaintiff Murch is an individual.

6. Defendant, Quest Health Solutions, LLC is a Florida corporation with its headquarters and principal place of business in Florida.

## III.  JURISDICTION AND VENUE

7. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8. Personal Jurisdiction: The Court has specific personal jurisdiction over Defendant because it directed its conduct into Pennsylvania by calling individuals associated with Pennsylvania, including those, like Plaintiff, possessing 215- area code numbers, which are associated with this District, specifically, North Wales, Bucks County, Pennsylvania.

9. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—was sent into this District.

## IV.   FACTS

### A.   The TCPA Prohibits Prerecorded Calls to Cell Phones

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

12. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto

consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

15. This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

16. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

17. Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

B. **Unsolicited Telemarketing to Plaintiff**

18. Plaintiff Murch is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

4

19. Plaintiff's residential cellular telephone number is (215)-XXX-XXXX.

20. Murch uses the number for personal, residential, and household reasons.

21. Murch does not use the number for business reasons or business use.

22. The number is a residential telephone line because it is not assigned to a telephone exchange service for businesses.

23. The number is assigned to a cellular telephone service in Murch's name and Murch pays the bill.

24. Plaintiff Murch never consented to receive calls from Defendant.

25. Plaintiff Murch never did business with the Defendant.

26. Defendant Quest used illegal robocalls to call the Plaintiff, including at least two calls, one on September 25, 2024 from the "spoofed" caller ID 215-434-1647 and one on October 2, 2024 from the "spoofed" caller ID 215-918-7589.

27. These calls were sent using and began with identical pre-recorded voices, possibly using an Artificial Intelligence (AI) robot or Mechanical Turk, and began:

> Hi, my name is Gene with U.S. Medical Supplies. How are you doing today?
>
> I'm doing great, thanks for asking. Let me ask you this. God forbid, do you have diabetes?
>
> Do you have Medicare or Medicare Advantage?

28. Further demonstrating that the call was illegally placed using a prerecorded voice, the robot then asked the Plaintiff to "just stay on the line, please," and transferred the call to a human.

29. The Plaintiff interacted with various agents of Quest Health Solutions' sales department who inquired in the Plaintiff had diabetes and attempted to sell her a "Prickless Diabetic Meter" that it would bill Medicare for.

30. The October 2, 2024 call was then transferred to the "shipping department" of defendant Quest Health Solutions.

31. While the call was being transferred to the shipping department, the Plaintiff also heard hold music and a robotic voice that stated, "Thank you for calling Quest Health Solutions. Your call is important to us. Please hold for the next available representative."

32. The agent in the shipping department with whom Plaintiff spoke was named "Anna," who confirmed that she was with "Quest Health Solutions." "Anna" attempted to confirm the Plaintiff's information, but recognized that the Medicare number provided was invalid, because the Plaintiff did not have Medicare. "Anna" therefore disconnected the call.

33. Moreover, "U.S. Medical Supplies" is merely an alias for Defendant Quest, and which is used at the outset of its illegal prerecorded calls to avoid ill will for the Defendant's brand.

34. The aforementioned calls were placed using a prerecorded voice because: (a) the robot played the identical series of messages and questions during both calls, (b) the robot's questions and speech were sometimes cut off, and there was a distinct background hiss between when the robot was talking and a period of silence, as if audio clips were being played in sequence, (c) the robot had a strange, generic, monotone voice, (d) it would be illogical for a human to call someone and play various scripted questions and statements without the ability to engage in dialogue, and (d) the Plaintiff was eventually transferred to multiple individuals during the call which were unquestionably human.

35. The aforementioned calls to the Plaintiff ere unwanted.

36. The calls were nonconsensual encounters.

37. The calls were made in an attempt to sell the Plaintiff diabetic meters.

38. Plaintiff does not have any need for diabetic meters.

39. Plaintiff does not have diabetes.

40. Plaintiff's privacy has been violated by the above-described telemarketing calls.

41. Plaintiff never provided her consent or requested the calls.

42. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## V. CLASS ACTION ALLEGATIONS

43. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class defined as follows:

> **Robocall Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers, specialized mobile radio numbers, radio common carrier numbers, or numbers for which they were charged for the call (2) Defendant, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.

44. Excluded from the Class are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

45. The Class, as defined above, is identifiable through telephone records and telephone number databases.

46. The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

7

47. Individual joinder of these persons is impracticable.

48. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

49. Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as she has no interests that conflict with any of the class members.

50. Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied them from receiving legitimate communications.

51. This class action complaint seeks injunctive relief and money damages.

52. There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

(ii) Whether Defendant used an artificial or pre-recorded voices to make the calls;

(iii) whether Defendant made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls; and

(iv) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

53. Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

54. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

55. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

56. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

57. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its affiliates, agents, and/or other persons or entities

acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227(b))
### (On Behalf of Plaintiff and the Robocall Class)

58. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

59. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an artificial and/or pre-recorded voice message to protected telephone numbers.

60. The Defendant's violations were negligent, willful, or knowing.

61. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

62. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making pre-recorded calls, except for emergency purposes, to any protected telephone number in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E. An award to Plaintiff and the Class of damages, as allowed by law; and

F. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this October 15, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
E.D. Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*/s/ Anthony Paronich*
Anthony Paronich
(*Pro Hac Vice* Forthcoming)
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*