### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA MURCH, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>QUEST HEALTH SOLUTIONS, LLC, *et al.*,<br><br>    Defendants. | Case No. 24-cv-05478-GAW |

### DEFENDANT QUEST HEALTH SOLUTIONS, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

For the reasons set forth in the accompanying Memorandum of Law, which is incorporated herein by reference, Defendant Quest Health Solutions, LLC ("Quest") moves to dismiss Plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

WHEREFORE, Quest respectfully requests that the Court grant this Motion and dismiss Plaintiff's Amended Complaint as to Quest.

Dated:  February 26, 2025

**GREENBERG TRAURIG, LLP**

Respectfully submitted,

*/s/ Brian T. Feeney*
Brian T. Feeney
1717 Arch Street
Suite 400
215.988.7812
feeneyb@gtlaw.com

*Attorney for Defendant Quest Health Solutions, LLC*

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................ 1

II.  FACTS & PROCEDURAL HISTORY ...................................................... 2

III.  ARGUMENT ............................................................................................ 5

A.  This Court Lacks Personal Jurisdiction Over Quest ......................... 5

i.  Standard For Motions to Dismiss Pursuant To Rule 12(b)(2) ..................... 5

ii.  This Court Does Not Have General Jurisdiction Over Quest ..................... 6

iii.  This Court Does Not Have Specific Jurisdiction Over Quest..................... 6

B.  Plaintiff Has Failed to State a Claim Against Quest.......................... 9

i.  Standard For Motions To Dismiss Pursuant To Rule 12(b)(6)................... 9

ii.  Plaintiff Fails to Plausibly Allege Quest Is Directly Liable ..................... 9

iii.  Plaintiff Fails to Sufficiently Allege Vicarious Liability........................... 10

a.  Plaintiff fails to allege facts that plausibly suggest that Quest and Happy Quote had anything other than an independent contractor relationship.. 11

b.  Plaintiff fails to plausibly allege any non-conclusory facts establishing an agency relationship between Quest and Happy Quote............................ 14

IV.  CONCLUSION......................................................................................... 17

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Abadi v. Target Corp.*,
   No. 22-02854, 2023 WL 137422 (E.D. Pa. Jan. 9, 2023) *aff'd*, 2023 WL
   4045373 (3d Cir. June 16, 2023) ................................................9

*Abramson v. CWS Apartment Homes, LLC*,
   No. 16-426, 2016 WL 6236370 (W.D. Pa. Oct. 24 2016) ......................7

*ADM Milling Co. v. Gold Crust Baking Co.*,
   No. 09-cv-00544, 2009 WL 1885880 (M.D. Pa. June 30, 2009)..............8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................9

*AT & T Co. v. Winback & Conserve Program, Inc.*,
   42 F.3d 1421 (3d Cir. 1994)..........................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................9

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)..........................................9

*Cmty. for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989)................................................10

*Covington v. Int'l Ass'n of Approved Basketball Offs.*,
   710 F.3d 114 (3d Cir. 2013)......................................15, 16

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)................................................6

*Dickson v. Direct Energy, LP*,
   No. 18-00182, 2024 WL 4416856 (N.D. Ohio Oct. 4, 2024)................17

*In re DISH Network, LLC*,
   28 FCC Rcd. 6574 (2013)............................................10

*Dobkin v. Enter. Fin. Group*,
   No. 14-01989, 2014 WL 4354070 (D.N.J. Sept. 3, 2014)....................15

*Doyle v. GoHealth, LLC*,
   No. 22-04291, 2023 WL 3984951 (D.N.J. Mar. 30, 2023) ..................10

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
   566 F.3d 94 (3d Cir. 2009).................................................................................5, 7, 8

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
   566 F.3d at 103–04 .......................................................................................8

*Fridline v. Integrity Vehicle Grp., Inc.*,
   No. 23-01194, 2023 WL 7170642 (M.D. Pa. Oct. 31, 2023) .................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011).......................................................................................6

*Hamilton v. Ropel*,
   No. 05-cv-193-J, 2006 WL 8435499 (D. Wyo. July 21, 2006) .............................12

*Holliday v. Bannister*,
   741 P.2d 89 (Wyo. 1987).................................................................................11

*Klein v. Just Energy Grp., Inc.*,
   No. 14-01050, 2016 WL 3539137 (W.D. Pa. June 29, 2016) ...............................11

*Kovalev v. Lidl US, LLC*,
   647 F. Supp. 3d 319 (E.D. Pa. 2022).................................................................5

*Lacon v. Educ. Principle Found.*,
   No. 21-03957-JDW, 2022 WL 2240074 (E.D. Pa. June 22, 2022) .........................7

*Meyer v. Holley*,
   537 U.S. 280 (2003).......................................................................................15

*Miller Yacht Sales, Inc. v. Smith*,
   384 F.3d 93 (3d Cir. 2004)...............................................................................5

*O'Connor v. Sandy Lane Hotel Co.*,
   496 F.3d 312 (3d Cir. 2007).............................................................................7

*Patterson v. FBI*,
   893 F.2d 595 (3d Cir. 1990).............................................................................5

*Shoemaker v. Zeitlin*,
   No. 21-01668, 2023 WL 3826460 (M.D. Pa. June 5, 2023)...............................10

*Smith v. Direct Bldg. Supplies, LLC*,
   No. 20-03583, 2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) ................................9

*Verotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Co.*,
   75 F.3d 147 (3d Cir. 1996)...............................................................................6

*Winer Fam. Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007)......................................................................3

*Woolfolk v. Duncan*,
   872 F.Supp. 1381 (E.D. Pa. 1995) ...................................................10, 11

*Worsham v. Direct Energy Servs., LLC*,
   No. 20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021), *aff'd*, No. 21-1677,
   2022 WL 1261998 (4th Cir. Apr. 28, 2022) .........................................11

## Statutes

Telephone Consumer Protection Act ................................................ *passim*

## Other Authorities

47 CFR 64.200 .....................................................................................13, 16

Black's Law Dictionary (12th ed. 2024)..................................................8

Constitution of the United States ........................................................5, 6

Restatement of Agency ....................................................................*passim*

Rule 12(b)........................................................................................*passim*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| |
|---|
| JESSICA MURCH, individually and on behalf of all others similarly situated, |
| Plaintiff, |
| v. |
| QUEST HEALTH SOLUTIONS, LLC, *et al.*, |
| Defendants. |

Case No. 24-cv-05478-GAW

**DEFENDANT QUEST HEALTH SOLUTIONS, LLC'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
<u>AMENDED COMPLAINT</u>**

## I.    <u>INTRODUCTION</u>

Defendant Quest Health Solutions, LLC ("Quest"), a Florida-based limited liability company with no material connection to Pennsylvania, is not alleged to have made any phone calls to Plaintiff.   Nevertheless, Plaintiff seeks to impose liability on Quest under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, for phone calls that Defendant Happy Quote LLC ("Happy Quote") allegedly made to Plaintiff.  This Court should dismiss Quest from this case for two reasons.

First, Quest is not subject to personal jurisdiction in Pennsylvania.  Plaintiff does not allege that Quest is "at home" in Pennsylvania and thus subject to general personal jurisdiction in this Court.  Moreover, the only connection that Plaintiff alleges in support of her claim that specific personal jurisdiction lies is her allegation that Happy Quote—not Quest—called her phone number, which is "associated with Pennsylvania" because her area code is 215.  Am. Compl. ¶ 9. Because Quest did not make the calls at issue in the Amended Complaint and did not expressly

aim any conduct into Pennsylvania, there is no specific personal jurisdiction over Quest in this action. The Amended Complaint should, therefore, be dismissed as to Quest under Rule 12(b)(2) for lack of personal jurisdiction.

Second, Plaintiff fails to allege any non-conclusory facts establishing that Happy Quote, in initiating the calls at issue, acted as Quest's agent such that Quest might be vicariously liable for Happy Quote's actions. On the contrary, the agreement between Quest and Happy Quote, which Plaintiff describes in her Amended Complaint, provides that Happy Quote is not Quest's agent and that it has no right to act on Quest's behalf. Moreover, the agreement does not give Quest the right to direct or control Happy Quote's communications with potential leads. Plaintiff has not alleged any non-conclusory facts to contradict that agreement or show that Quest directed Happy Quote's actions.[1] Because Plaintiff has failed to allege facts that would establish that Happy Quote acted as Quest's agent, this Court should dismiss the Amended Complaint under Rule 12(b)(6) as to Quest.

## II.    FACTS & PROCEDURAL HISTORY

Plaintiff alleges that Happy Quote—not Quest—made two "unsolicited pre-recorded telemarketing calls to her . . . using technology capable of generating thousands of similar calls per day." ECF No. 9 ("Am. Compl.") ¶¶ 2–3. Plaintiff claims that Happy Quote called Plaintiff's telephone number on September 25, 2024 and October 2, 2024 (the "Relevant Calls"). *Id*. ¶ 27. The Relevant Calls allegedly began with "identical pre-recorded voices" stating that the caller was

---

[1] Plaintiff originally filed this action against Quest under a theory of direct liability. ECF No. 1. After learning that Happy Quote, rather than Quest, placed the calls at issue in this action, Plaintiff amended her Complaint to add Happy Quote as a defendant and to assert that Quest is vicariously liable for the actions of Happy Quote. Plaintiff's Amended Complaint simply adds buzz words and legal conclusions regarding Quest but does not provide any factual allegations plausibly supporting a theory of agency to support vicarious liability.

"Gene with U.S. Medical Supplies." *Id.* ¶ 28. Plaintiff states that "U.S. Medical Supplies" is "merely an alias for" Happy Quote. *Id.* ¶ 34.

Plaintiff further alleges that the calls made by Happy Quote were "transferred" to a "human," and that she "interacted" with live agents of Quest. *Id.* ¶¶ 29-31. The allegations demonstrate that these were not outbound calls made by Quest, but were rather *incoming* calls to Quest initiated by a third party.

Despite allegations confirming that Quest did not make any call to Plaintiff, she contends— without any factual substantiation—that Quest is liable for Happy Quote's conduct because the calls were allegedly made at Quest's direction or with its knowledge. *Id.* ¶ 40. Plaintiff alleges that Quest had "full knowledge of Happy Quote's illegal conduct." *Id.* ¶ 42. Plaintiff also claims that Quest failed to supervise Happy Quote or enforce its compliance with laws and regulations. *Id.* ¶ 43. None of these conclusory allegations are supported by any facts.

Nor does the agreement between Quest and Happy Quote establish an agency relationship sufficient to impose vicarious liability on Quest. Plaintiff asserts that Quest's relationship with Happy Quote contains "numerous hallmarks of agency, which were memorialized in a lead generation agreement." *Id.* ¶ 46. But the agreement between the parties itself expressly refutes any agency relationship between Quest and Happy Quote. The August 22, 2024 Lead Generation Agreement between Happy Quote and Quest (the "Lead Agreement," attached hereto as Exhibit A)[2] explicitly provides that Happy Quote "shall perform its obligations under this Agreement and act at all times as an independent contractor and nothing in this Agreement" should "be interpreted

---

[2] As Plaintiff repeatedly refers to and relies upon the Lead Agreement in her Complaint, this Court may consider the Lead Agreement attached hereto without converting Quest's Motion to Dismiss to a motion for summary judgment. *Winer Fam. Trust v. Queen*, 503 F.3d 319, 328–29 (3d Cir. 2007).

or applies so as to make the relationship … anything other than independent contractors[.]" Ex. A at § 2.3.

Other provisions of the Lead Agreement further establish that Happy Quote and Quest did not have an agency relationship.  First, the Lead Agreement defeats Plaintiff's theory that Happy Quote was selling Quest's products on Quest's behalf.  It states that neither Quest nor Happy Quote was "granted any right … on behalf of the other" to "assume or create any obligation or responsibility binding" the other.  *Id*.  Further, the Lead Agreement confirms that Happy Quote performed just one "activity"—to "deliver Qualified Leads to" Quest without engaging in deceptive conduct or otherwise violating the law, *id*. § 2.1.  Other than the agreement that Happy Quote comply with applicable laws, including the TCPA, the Lead Agreement does not provide any instruction on the method, manner, or means by which Happy Quote is to communicate with potential leads.  *Id*. *passim*.

Despite the Lead Agreement's clear language indicating the contrary, Plaintiff asserts the conclusion that Quest "controlled the day-to-day activities of Happy Quote," Am. Compl. ¶ 48, and "controlled the content of Happy Quote's telemarketing," *Id.* ¶ 51.  Plaintiff attempts to support these points by noting that the Lead Agreement provided that "Happy Quote would 'deliver Qualified Leads' to Quest," Quest would provide "Happy Quote with data regarding the performance of Happy Quote Leads … upon request," Quest could reject leads which would then be subtracted from or credit to Happy Quotes next invoice, and Quest was permitted to terminate Happy Quote (but did not).  *Id.* ¶¶ 48–50, 52–57.  These allegations are irrelevant, as none of these provisions demonstrate that Quest had any control over how the calls were made and to whom.

Lastly, Plaintiff asserts that Quest ratified Happy Quote's alleged conduct because Quest knew the call to Plaintiff was a "non-consensual pre-recorded call" and Quest accepted Plaintiff's

lead from Happy Quote. *Id*. ¶ 59. However, Plaintiff does not assert any facts to establish that

Quest knew Happy Quote allegedly placed a "non-consensual pre-recorded call" to Plaintiff.

## III.   ARGUMENT

### A.   This Court Lacks Personal Jurisdiction Over Quest

#### i.   Standard For Motions to Dismiss Pursuant To Rule 12(b)(2)

Plaintiff's Amended Complaint should be dismissed as to Quest under Rule 12(b)(2) for

lack of personal jurisdiction. "To survive a motion to dismiss for lack of personal jurisdiction, a

plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants."

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citation omitted); *see also*

*Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) ("Once the defense has been raised, then

the plaintiff must sustain its burden of proof in establishing jurisdictional facts"). To fulfill that

burden, plaintiff may rely on a combination of the "allegations in the complaint, affidavits, or other

evidence*." Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 334 (E.D. Pa. 2022) (citing *Metcalfe*

*v. Renaissance Marine, Inc*., 566 F.3d 324, 330 (3d Cir. 2009)). However, to "survive a Rule

12(b)(2) motion to dismiss, a plaintiff may <u>not</u> merely rely on the allegations in its complaint." *Id.*

(quoting *Deardorff v. Cellular Sales of Knoxville, Inc*., No. 19-2642-KSM, 2020 WL 5017522, at

*1–2 (E.D. Pa. Aug. 25, 2020) (emphasis in the original)).

"A federal district court may assert personal jurisdiction over a nonresident of the state in

which the court sits to the extent authorized by the law of that state." *D'Jamoos ex rel. Est. of*

*Weingeroff v. Pilatus Aircraft Ltd*., 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Provident Nat'l Bank*

*v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm

statute provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth

allowed under the Constitution of the United States." *Id*. (quoting 42 Pa. Cons. Stat. § 5322(b)).

As a result, in determining whether there is personal jurisdiction, courts ask "whether, under the

Due Process Clause, [a moving defendant] has 'certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (second alteration in original). Where plaintiff contends jurisdiction is based on specific personal jurisdiction, the court is "concerned solely with the jurisdiction in the action at bar." *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)).

### ii.    This Court Does Not Have General Jurisdiction Over Quest

Plaintiff does not contend that Quest is subject to general jurisdiction in Pennsylvania. Am. Compl. ¶ 9. Plaintiff concedes that Quest is a Florida corporation with its headquarters and principal place of business in Florida. *Id.* ¶ 6. A court has general jurisdiction over a corporation only if the "corporation is fairly regarded as at home" within the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For a corporation, the paradigm bases for general jurisdiction are the place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Quest is, therefore, "at home" in Florida, and not in Pennsylvania. A corporation may also be "at home" where its "operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 139 n. 19. Plaintiff does not set forth any allegations that Quest's operations are such that Quest is "at home" in Pennsylvania.

### iii.    This Court Does Not Have Specific Jurisdiction Over Quest

Specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant should reasonably anticipate being haled into court" in that forum. *Verotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Co*., 75 F.3d 147, 151 (3d Cir. 1996) (citations omitted). To prove specific jurisdiction, a plaintiff must establish three prerequisites. First, "the defendant must have 'purposefully directed [its] activities'

at the forum." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 472). Third, "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476).

For specific jurisdiction to lie, a "defendant's contacts, however, must amount to "a deliberate targeting of the forum." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d at 103 (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d at 317). The allegations in the Amended Complaint do not show that Quest "purposefully directed" or "targeted" its activities at Pennsylvania. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d at 317. Indeed, Plaintiff does not mention "Pennsylvania" a single time in the "Facts," section, the "Class Action Allegations," or the "Counts." Am. Compl., *passim*. Although district courts hearing TCPA cases have found "purposeful direction based on allegations a defendant sent its telemarketing call to a number bearing the state's area code," *Abramson v. CWS Apartment Homes, LLC*, No. 16-426, 2016 WL 6236370, at *4 (W.D. Pa. Oct. 24 2016) (collecting cases), Plaintiff does not assert that Quest made a call to Plaintiff or any other Pennsylvania resident. Instead, Plaintiff alleges that *Happy Quote* placed the Relevant Calls, which does not amount to Quest having "purposefully directed" conduct into Pennsylvania.

Plaintiff also fails to allege facts showing that Quest targeted Pennsylvania through Happy Quote, "a Missouri corporation with its headquarters and principal place of business in Missouri." Am. Compl. ¶ 7. *See, e.g.*, *Lacon v. Educ. Principle Found.*, No. 21-03957-JDW, 2022 WL 2240074, at *3 (E.D. Pa. June 22, 2022) (finding no personal jurisdiction where TCPA defendant

gathered contact information nationally and did not target Pennsylvania specifically).  The Third Circuit has explained "it is clear that the critical finding that the defendant purposefully availed itself of the privilege of conducting activities within the forum requires contacts that amount to a deliberate reaching into the forum state to target its citizens."  *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d at 103–04 (citing *Burger King*, 471 U.S. at 475–75).  Rather than "target" Pennsylvania or its citizens, Plaintiff alleges that "Quest hired Happy Quote to orchestrate an *en masse* telemarketing campaign."  Am. Compl. ¶¶ 45, 73.  The term "*en masse*," which means "In a mass; in a large group; all together," Black's Law Dictionary (12th ed. 2024), is the opposite of "directed" or "targeted."  Plaintiff does not allege that Quest directed Happy Quote to place calls to or target Pennsylvania residents or Pennsylvania area codes.  Am. Compl., *passim*.  A defendant's "efforts to exploit a national market necessarily included Pennsylvania as a target, but those efforts simply do not constitute the type of deliberate contacts within Pennsylvania that could amount to purposeful availment of the privilege of conducting activities in that state."  *D'Jamoos*, 566 F.3d at 104.  Moreover, the Lead Agreement contains a provision stating the agreement between Happy Quote and Quest is governed by Wyoming—not Pennsylvania—law.  Ex. A § 11.3; *see ADM Milling Co. v. Gold Crust Baking Co.*, No. 09-cv-00544, 2009 WL 1885880, at *4 (M.D. Pa. June 30, 2009) ("choice of law provision weighs against a finding of personal jurisdiction" where it indicates another state's "law is intended to control the contract[]" rather than Pennsylvania's).  Plaintiff's allegations fail to show Quest made any deliberate contacts with Pennsylvania.

The Amended Complaint should be dismissed as to Quest pursuant to Rule 12(b)(2) because this Court does not have personal jurisdiction over Quest.

### B.   Plaintiff Has Failed to State a Claim Against Quest

#### i.   Standard For Motions To Dismiss Pursuant To Rule 12(b)(6)

Plaintiff's Amended Complaint should also be dismissed as to Quest pursuant to Rule 12(b)(6).  To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A complaint is plausible on its face when the plaintiff pleads [a]factual contention that 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Abadi v. Target Corp.*, No. 22-02854, 2023 WL 137422, at *3 (E.D. Pa. Jan. 9, 2023) *aff'd*, 2023 WL 4045373 (3d Cir. June 16, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555–57).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Moreover, the complaint must be supported by factual allegations that are sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  While well-pled factual allegations must be taken as true, the Court "need not credit a complaint's bald assertions or legal conclusions." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997).

#### ii.   Plaintiff Fails to Plausibly Allege Quest Is Directly Liable

To state a claim under TCPA § 227(b), a plaintiff must allege: "(1) the defendant called a cellular telephone number; (2) using an [automatic telephone dialing system or prerecorded or artificial voice]; (3) without the recipient's prior express consent." *Smith v. Direct Bldg. Supplies, LLC*, No. 20-03583, 2021 WL 4623275, at *2 (E.D. Pa. Oct. 7, 2021) (alteration in original, cleaned up) (quoting *Zemel v. CSC Holdings LLC*, No. 18-02340, 2018 WL 6242484, at *3 (D.N.J.

Nov. 29, 2018)).  Further, to claim direct liability under the TCPA, a plaintiff must plausibly allege

that the defendant "actually, physically initiated the telephone call at issue."  *Shoemaker v. Zeitlin*,

No. 21-01668, 2023 WL 3826460, at *9 (M.D. Pa. June 5, 2023) (quoting *Aaronson v. CHW Grp.,*

*Inc.*, No. 18-01533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)).  Plaintiff concedes that

Quest did not initiate the Relevant Calls.  Am. Compl. ¶ 27.  Plaintiff has therefore failed to plead

direct liability as to Quest under the TCPA.

### iii.    Plaintiff Fails to Sufficiently Allege Vicarious Liability

In TCPA cases, "[f]ederal common law principles of vicarious liability are applicable

where the plaintiff establishes an agency relationship between the defendant and a third-party

caller."  *Doyle v. GoHealth, LLC*, No. 22-04291, 2023 WL 3984951, at *4 (D.N.J. Mar. 30, 2023)

(citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016); *Cunningham v. Cap. Advance*

*Sols., LLC*, No. 17-13050, 2018 WL 6061405, at *6 (D.N.J. Nov. 20, 2018)); *see also In re DISH*

*Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013) (instructing that sellers can be held liable for

violations by contracted telemarketers under federal common law principles of vicarious liability).

Courts look to the Restatements of Agency to determine common law principles.  *See Cmty. for*

*Creative Non-Violence v. Reid*, 490 U.S. 730, 752 n. 31 (1989) (explaining that in applying "the

general common law of agency, we have traditionally looked for guidance to the Restatement of

Agency.").  Under federal common law, the three theories of agency are: "actual authority,

apparent authority, and ratification."  *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4.

However, "an employer may be liable for the intentional torts committed by a servant, but not for

those committed by an independent contractor."  *Woolfolk v. Duncan*, 872 F.Supp. 1381, 1392

(E.D. Pa. 1995).

Plaintiff cannot allege any facts supporting recovery under a theory of vicarious liability

because, as the Lead Agreement establishes, Happy Quote was an independent contractor and not

Quest's agent.  Moreover, Plaintiff has not pled any facts to support an agency relationship or that otherwise contradict the independent contractor status established by the Lead Agreement. Plaintiff merely parrots the elements of each of the three agency theories without plausibly alleging any non-conclusory facts showing that Quest and Happy Quote had an agency relationship.  Thus, Plaintiff's Amended Complaint fails to state a claim against Quest.

      a. *Plaintiff fails to allege facts that plausibly suggest that Quest and Happy Quote had anything other than an independent contractor relationship.*

The Lead Agreement establishes that Happy Quote was not Quest's agent.  *See* Ex. A at § 2.3.  Section 2.3 specifically sets forth the "Status of Happy Quote," establishing that Happy Quote "shall perform its obligations under this [Lead] Agreement and act at all times as an *independent contractor* and nothing in this agreement shall be interpreted or applied so as to make the relationship … anything other than independent contractors…."  *Id.* (emphasis added).  Plaintiff does not plausibly allege that Happy Quote acted as anything other than its contractually defined role of an independent contractor.

To determine whether a relationship is more than independent contractor status, the "overriding element … is dependent on whether the employer has a right to control the details of the work whereby liability is sought to be established."  *Holliday v. Bannister*, 741 P.2d 89, 95 (Wyo. 1987).[3]  The issue "becomes one of law when only one reasonable inference can be drawn." *Id.*  Here, the only time Plaintiff uses the term "supervise" is to say that Quest "failed to supervise

---

[3] While federal common law governs vicarious liability for violations of the TCPA, the applicable test to determine whether one is an independent contractor is a matter of state law.  *See Klein v. Just Energy Grp., Inc.*, No. 14-01050, 2016 WL 3539137, at *10 (W.D. Pa. June 29, 2016) (applying Pennsylvania independent contractor jurisprudence in a case concerning vicarious liability under the TCPA); *see also Worsham v. Direct Energy Servs., LLC*, No. 20-00193, 2021 WL 948819, at *5 (D. Md. Mar. 12, 2021), *aff'd*, No. 21-1677, 2022 WL 1261998 (4th Cir. Apr. 28, 2022) (applying Maryland law to determine whether vendors were properly classified as an independent contractors in a TCPA case concerning vicarious liability).  Here, the Lead Agreement dictates that matters of state law are governed by the laws of the State of Wyoming.  *See* Ex. A at § 11.3.

Happy Quote," Am. Compl. ¶ 43, and Plaintiff's only allegations that Quest "controlled" Happy Quote's telemarketing actually support an inference to the contrary, *id* ¶¶ 48–51.

"When a worker is an independent contractor, the employer is typically interested only in the results of the work and does not direct the details of the how the work is performed." *Hamilton v. Ropel*, No. 05-cv-193-J, 2006 WL 8435499, at *5 (D. Wyo. July 21, 2006) (quoting *Diamond B Servs., Inc. v. Rohde*, 120 P.3d 1031, 1041 (Wyo. 2005)).  Plaintiff's only allegations of Quest's interest in "control" over how Happy Quote performed its work are rooted in the Lead Agreement. However, the very provisions she references show that Quest was interested only in the leads generated by Happy Quote, *i.e.*, "the results of the work and [did] not direct the details of how the work is performed." *Hamilton v. Ropel*, 2006 WL 8435499, at *5.

The Lead Agreement dictates that Happy Quote's sole "activity" is to "deliver Qualified Leads" to Quest.  Ex. A § 2.1.  The Lead Agreement does *not* include direction or instruction regarding how Happy Quote conducts this "activity."  *Id*. *passim*.  Notably, the Lead Agreement does not include or refer to any script that Happy Quote is obligated to follow when making calls. *Id*.  Nor does the Lead Agreement give Quest the right to dictate a script for Happy Quote to use or provide Quest the power to otherwise manage the substance of Happy Quote's communications. Moreover, nothing in the Lead Agreement directs Happy Quote to make robocalls or use prerecorded or artificial voice.  *Id*.  Instead, the manner in which Happy Quote made calls or otherwise generated leads was left solely to Happy Quote's discretion.  *Id*.  The Lead Agreement demonstrates that Quest simply did not have the authority to control Happy Quote.  *Id*.

Plaintiff, in reciting the conclusion Quest had "control" over Happy Quote, points to provisions in the Lead Agreement that allowed Quest to provide the "specific criteria for the leads it would accept and required Happy Quote to adhere to those criteria" and Quest was permitted to

reject leads that did not meet that criterion. *Id*. ¶¶ 48, 50. But Quest's right under the Lead Agreement to accept or reject the leads generated by Happy Quote does not support the inference that "Quest controlled the content of Happy Quote's telemarking." *Id.* ¶ 51. On the contrary, Plaintiff's allegations and the quoted language illustrate that the only thing Quest had control over was whether to accept the final product of Happy Quote's lead generation efforts, not the manner in which Happy Quote generated leads.

Indeed, rather than control Happy Quote's practices in generating leads, the Lead Agreement identifies just two "Happy Quote Responsibilities" (which Happy Quote was already obligated by law to fulfil): (a) "avoid deceptive, misleading or unethical representations or practices" and (b) "comply with all applicable Laws, including the [TCPA], and 47 CFR 64.200 and Do Not Call List requirements." Ex. A § 3.2. The Lead Generation does not, however, provide any instruction on the method, manner, or means by which Happy Quote should perform its obligations. *Id*., *passim*. Nothing in the Lead Agreement provides Quest any right or mechanism to control how Happy Quote goes about "delivering Qualified Leads," but instead only dictates that Happy Quote shall not obtain them in illegal ways.

Plaintiff also asserts that the Lead Agreement gave Quest control over Happy Quote based on the descriptions of Quest as a company that "desires to purchase leads for various products and services" and Happy Quote as a "company specializing in lead generation." *Id*. ¶ 47. As the Restatement of Agency explains, however, a contract to purchase leads does not establish any degree of control necessary for an agency relationship. *See* Restatement (Second) of Agency § 14N, comment b (no agency relationship where a person "contracts to accomplish something for another or to deliver something to another"). Quest's agreement to purchase leads from Happy Quote does not – as the Restatement of Agency makes clear – support the inference that Happy

Quote was acting on Quest's behalf, particularly where the Lead Agreement is explicit in delineating that Happy Quote is not an agent and does not act on Quest's behalf.  Ex. A § 2.3. Lastly, Plaintiff claims that another "hallmark of agency" is the provision under which Quest agreed to provide performance data upon Happy Quote's request.  *Id.* ¶ 49 (referring to Ex. A § 3.1(c).  Once again, this provision does not support Plaintiff's theory of agency; rather, it simply requires Quest to provide Happy Quote with information regarding the performance of the leads provided by Happy Quote.  It does not provide Quest with any right or ability to control the methods used by Happy Quote to generate leads.

These provisions—together with the explicit recitation of Happy Quote's independent contractor status, with no right or authority to act on Quest's behalf—leave room for just one reasonable inference: Happy Quote was not Quest's agent.   Therefore, Plaintiff has failed to plausibly allege Quest is vicariously liable for Happy Quote's alleged violation of the TCPA.

> b.  *Plaintiff fails to plausibly allege any non-conclusory facts establishing an agency relationship between Quest and Happy Quote.*

Plaintiff's conclusory allegations do not establish agency under any of the three agency theories.  "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent."  *AT & T Co. v. Winback & Conserve Program, Inc*., 42 F.3d 1421, 1434 (3d Cir. 1994) (citation omitted).  As the Lead Agreement and Amended Complaint themselves confirm, Quest did not consent to have Happy Quote act on its behalf, and Quest did not have the requisite control over Happy Quote to establish agency.  Accordingly, Plaintiff failed to state a claim against Quest and Quest should be dismissed.

Plaintiff fails to allege any facts supporting an actual agency relationship between Quest and Happy Quote.  "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the

principal's manifestations to the agent, that the principal wishes the agent so to act." *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 120 (3d Cir. 2013) (quoting Restatement (Third) of Agency § 2.01 (2006)).  In order to plead the existence of actual authority, "the alleged facts must indicate that the principal has control over the agent's acts." *Fridline v. Integrity Vehicle Grp., Inc.*, No. 23-01194, 2023 WL 7170642, at *3 (M.D. Pa. Oct. 31, 2023) (quoting *Warciak v. Subway Rests., Inc.*, No. 16-08694, 2019 WL 978666 at *2 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020)).  Merely stating, in a conclusory fashion, that Happy Quote initiated the Relevant Calls "at Defendant Quest's direction" is not sufficient to plausibly allege that Quest had actual authority to control Happy Quote's actions.  Am. Compl. ¶ 27.  In direct contradiction of Plaintiff's assertion, the Lead Agreement explicitly provides that neither party had any right "on behalf of the other Party to assume or create any obligation or responsibility binding such other party."  Ex. A § 2.3.  Further, Happy Quote was not selling Quest's product, but instead providing leads to Quest so that Quest could pursue sales of its own products.  Plaintiff does not allege—nor could she—that Happy Quote tried to or was authorized to sell Quest's products on Quest's behalf. *Compare Dobkin v. Enter. Fin. Group*, No. 14-01989, 2014 WL 4354070, at *4 (D.N.J. Sept. 3, 2014) (holding that an "outsourcing arrangement in which [one defendant] had actual authority to sell [another defendant's] products through telemarketing calls" is indicative of an agency relationship).  Indeed, the Lead Agreement does not provide Happy Quote with the authority to sell or market Quest's products.  Ex. A, *passim*.

Moreover, Plaintiff has not alleged that Happy Quote was acting within the "scope of their authority" when Happy Quote initiated the Relevant Calls.  *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("Traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment.").  On

the contrary, Happy Quote, by the terms of the Lead Agreement, "agree[d]," "acknowledge[d]," and "covenant[ed]" to adhere to the TCPA.[4]  Happy Quote's alleged actions in violation of the TCPA were contrary to the terms of the Lead Agreement.  Thus, even assuming that Happy Quote had any authority to act for Quest (and the Lead Agreement shows Happy Quote had no such authority), Quest could not be vicariously liable for Happy Quote's alleged violations of the TCPA under the theory of actual authority.

Plaintiff has also failed to allege agency under a theory of apparent authority.  "'Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority' despite the absence of an actual agency relationship." *Covington*, 710 F.3d at 120 (quoting *Winback*, 42 F.3d at 1439).  Plaintiff does not allege that the alleged robotic portion of the Relevant Calls identified the caller as being associated with Quest.  Rather, Plaintiff alleges that during the Relevant Calls, a voice introduced itself as "Gene with U.S. Medical Supplies."  Am. Compl. ¶ 28.  Plaintiff asserts that "U.S. Medical Supplies" is "merely an alias for Defendant[] Happy Quote" *Id*. ¶ 34.  Plaintiff's allegation precludes a finding of apparent authority.  If, as she alleges, U.S Medical Supplies is an "alias" for Happy Quote, *id*., then there is no reasonable basis for Plaintiff to believe that Happy Quote was an "apparent" agent of Quest.  Instead, Happy Quote's use of an alias establishes that Happy Quote did not hold itself out to Plaintiff as an agent of Quest.

Finally, Plaintiff's "threadbare recitals" of the elements for ratification are insufficient to overcome a motion to dismiss for failure to state a claim.  Liability under the TCPA based on

---

[4] Section 3.2 of the Lead Agreement, outlining Happy Quote's responsibilities, provides that "Happy Quote agrees to … comply with all applicable Laws, including the Telephone Consumer Protection Act, 42 USC 227 and 47 CFR 64.200 and Do Not Call List requirements." Ex. A at § 3.2.  In addition, Section 7.3 of the Lead Agreement states that Happy Quote "acknowledges and covenants" that it would comply with all requirements of the TCPA. Ex. A § 7.3.

ratification arises when a seller "ratifies [the unlawful acts] by knowingly accepting their benefits"—for example, "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences."  *Dickson v. Direct Energy, LP*, No. 18-00182, 2024 WL 4416856, at *13 (N.D. Ohio Oct. 4, 2024) (quoting *DISH Network*, 28 F.C.C. Rcd. 6574 at ¶ 34)).  Plaintiff alleges that Quest did not terminate Happy Quote when Quest was "informed of Happy Quote's illegal calling conduct."  Am. Compl. ¶ 57.  However, Plaintiff does not allege facts showing how or when Quest was actually informed of Happy Quote's alleged actions.  Restatement (Third) of Agency § 4.01(1) (2006) ("[a party] is not bound by a ratification made without knowledge of material facts involved in the original act when the [party] was unaware of such lack of knowledge.").

Because Plaintiff has failed to plausibly allege Quest is directly or vicariously liable under a theory of agency, the Amended Complaint should be dismissed as to Quest pursuant to Rule 12(b)(6).

## IV.    <u>CONCLUSION</u>

For the above stated reasons, Quest respectfully requests that this Court dismiss the Amended Complaint under Rules 12(b)(2) and 12(b)(6).

**GREENBERG TRAURIG, LLP**

February 26, 2025                          Respectfully submitted,

<u>/s/ Brian T. Feeney</u>
Brian T. Feeney
1717 Arch Street
Suite 400
215.988.7812
feeneyb@gtlaw.com

*Attorney for Defendant Quest Health Solutions, LLC*

-17-

<u>**CERTIFICATE OF SERVICE**</u>

I, Brian T. Feeney, hereby certify that on this 26th day of February, 2025, I caused a true and correct copy of the foregoing Motion to Dismiss to be served on all counsel of record via the Court's electronic filing system.

*/s/ Brian T. Feeney*
Brian T. Feeney