IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA MURCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUEST HEALTH SOLUTIONS, LLC, *et al.*,<br><br>Defendants. | Case No. 24-cv-05478-GAW |

**DEFENDANT QUEST HEALTH SOLUTIONS, LLC'S REPLY IN
SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

I. **INTRODUCTION**

Plaintiff's Opposition to Quest's Motion to Dismiss ("Opposition"), ECF No. 25, fails to overcome the facts alleged and not alleged in the Amended Complaint, as well as the terms of the parties' Lead Generation Agreement, which together show that Quest (1) is not subject to personal jurisdiction in this action; and (2) cannot be vicariously liable for Happy Quote's actions. These facts include:

- Quest did not make the alleged phone calls at issue, ECF No. 9, Am. Compl., *passim*;

- While Plaintiff alleges that the calls she received originated from Pennsylvania phone numbers, *id.* ¶ 27, those calls were made by Happy Quote, not Quest;

- The Lead Generation Agreement between Happy Quote and Quest expressly provides that Happy Quote had no authority to act on behalf of Quest or "to assume or create any obligation or responsibility binding upon" Quest, *see* ECF No. 19-2, Lead Generation Agreement, Motion to Dismiss at Ex. A § 2.3;

- Plaintiff does not allege that Happy Quote even purported to act on Quest's behalf; to the contrary, the Amended Complaint alleges that Happy Quote transferred the call as an incoming call to Quest so that Quest could attempt to sell its products on its own behalf, ECF No. 9 ¶ 29;

- No facts alleged show that Quest controlled Happy Quote to such an extent that Happy Quote could be deemed Quest's agent, notwithstanding the parties' agreement that they had no agency relationship.

- Although Plaintiff now asserts based on LinkedIn pages that Quest "has at least two sales employees in Pennsylvania," ECF No. 25-2, Jessica Murch Declaration in Support of Opposition ("Murch Decl.") ¶ 19, she concedes that Quest is not subject to general jurisdiction in Pennsylvania, ECF No. 25 at 7, and the sales employees did not become employed by Quest until after the dates of the calls at issue, so there cannot be any connection whatsoever between the two employees and the alleged phone calls necessary to support specific personal jurisdiction over Quest.

This record compels the conclusion that Quest should be dismissed from this action for lack of personal jurisdiction and because Quest cannot be vicariously liable for Happy Quote's alleged actions.

## II. ARGUMENT

### A. Plaintiff Cites Inapposite Authorities Concerning Personal Jurisdiction

Plaintiff's Opposition fails to support her argument that Quest is subject to personal jurisdiction on the theory that Happy Quote is its agent.[1] Plaintiff's Opposition also fails to cite

---

[1] Plaintiff complains that "allow[ing] Defendant to escape liability at the pleadings stage on jurisdictional grounds" would offend the TCPA and Supreme Court case law. ECF No. 25 at 8. A finding that specific personal jurisdiction is lacking over Quest, however, does not equate to a finding of no liability for Quest. Instead, it would simply require this case to be heard in a court where Quest is subject to personal jurisdiction.

case law supporting her proposition that Quest is subject to specific personal jurisdiction in Pennsylvania even if there is no agency relationship between Quest and Happy Quote.

### i.    Quest is Not Subject to Specific Personal Jurisdiction On An Agency Theory

Plaintiff attempts to satisfy the requirement that she show that Quest "purposefully directed" conduct at Pennsylvania not by pointing to any of Quest's conduct, but instead by claiming that Happy Quote's alleged phone calls are imputable to Quest. ECF No. 25 at 4–6. But the authorities she cites are inapposite.

For example, in *Newell v. Strategic Admin. Grp., Inc.*, No. 2:20-CV-00967-JDW, 2020 WL 12770854 (E.D. Pa. May 6, 2020), the agent was authorized to sell the principal's product on the principal's behalf. This Court specifically noted that the principal "authorizes those third-parties to enter into contract[s] on its behalf." *Id.* at *1. Here, by contrast, the Lead Generation Agreement expressly provides that Happy Quote has no authority to enter into agreements or sell products on Quest's behalf or otherwise to act for Quest, and Plaintiff makes no allegation to the contrary. Instead, as Plaintiff alleges, Happy Quote's representative did not even mention "Quest" during her discussion with Plaintiff, and Happy Quote transferred the caller to Quest without having made any sale. ECF No. 9 ¶¶ 28–31. Plaintiff's own allegations regarding the alleged calls likewise fail to demonstrate an agency relationship between Quest and Happy Quote. Happy Quote is not alleged to have even purported to make a sale on Quest's behalf; instead, Plaintiff admits that the call was transferred to Quest so that Quest could attempt to sell its own products. *Id.* ¶ 29. This allegation defeats Plaintiff's agency theory.

Similarly, in *Abramson v. Agentra, LLC*, No. 18-615, 2018 WL 6617819, at * 4 (W.D. Pa. Dec. 18, 2018), the court found that the plaintiff had alleged an agency relationship because the principal "outsources its telemarketing and *authorizes those third-parties to enter into contracts*

*on its behalf.*" *Id*. at *4 (emphasis added, omitting internal citations).  Again, Plaintiff does not allege that Happy Quote was authorized to sell Quest's products or "enter into contracts on its behalf."  The agreement between Happy Quote and Quest establishes that Happy Quote had no such authority.  *See* ECF No. 19-2 § 2.3.  Accordingly, Plaintiff has not shown and cannot show that Happy Quote was Quest's agent or that Quest "purposefully directed" conduct into Pennsylvania via Happy Quote as its agent.

The other cases Plaintiff cites likewise fail to establish personal jurisdiction over Quest on an agency theory.  In *Perrong v. Chase Data Corp.*, No. 22-02628, 2024 WL 329933 (E.D. Pa. Jan. 26, 2024), this Court inferred an agency relationship because the principal "owned and operated the phone numbers used for the calls, and worked closely with its purported clients in placing the calls[.]" *Id*. at *5, n. 1.  By contrast, Plaintiff has not alleged Quest owned and operated the phone number allegedly used by Happy Quote to call Plaintiff.  Moreover, this Court in *Perrong* did not address the intersection of vicarious liability and personal jurisdiction, but instead considered whether text messages to a number bearing a Pennsylvania area code constituted sufficient contact with Pennsylvania.  *Id*. at *n. 2.

    **ii.**    **Quest is Not Otherwise Subject to Specific Personal Jurisdiction**

Having failed to establish that Quest is subject to personal jurisdiction based on an agency theory, Plaintiff falls back to claiming that Quest's alleged "contacts" with Pennsylvania are themselves sufficient to establish personal jurisdiction.  But this argument falls far short. Plaintiff analyzes specific jurisdiction under the two-part test enunciated in *Burger King* and continually states the conclusion that Quest "purposefully avail[ed]" itself of the privilege of conducting activities in Pennsylvania.  ECF No. 25 at 7–10.  The test for specific personal jurisdiction in the Third Circuit, however, is whether "(1) a nonresident defendant must 'purposefully direct' its

activities at a resident of the forum; (2) the injury arises from, or relates to, those activities; and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice." *Lacon v. Educ. Principle Found.*, No. 2:21-cv-03957-JDW, 2022 WL 2240074, at *3 (E.D. Pa. June 22, 2022) (quoting *D'Jamoos ex rel. Estate of Weinegroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009)).

Quest is not subject to specific personal jurisdiction because Quest did not direct its activities at a resident of the forum, nor did the injuries in this case arise from or relate to any such activities. Quest did not direct any call to Plaintiff; rather, Plaintiff alleges that her call came to Quest as incoming call after Happy Quote's representative called and spoke to Plaintiff. Moreover, Plaintiff's alleged injury does not arise from or relate to her alleged call with Quest; rather, it arises from and relates to Happy Quote's alleged use of an artificial voice at the outset of Happy Quote's call with Plaintiff. Because Plaintiff failed to establish both that Quest deliberately targeted Plaintiff and that her injury arises from her interaction with Quest, she has failed to establish that Quest is subject to personal jurisdiction.

To distract from her failure to establish Quest's "deliberate targeting of the forum," *D'Jamoos*, 556 F.3d at 103, Plaintiff points to *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021), which held that a break in the causational chain does not break the jurisdictional chain. *Id*. at 373–74. Quest's argument, however, is not that jurisdiction is lacking due to a break in the causational chain. Instead, Quest is not subject to personal jurisdiction because Quest did not deliberately target Plaintiff (or any other Pennsylvania resident), and Plaintiff's alleged injury arises from the call she received from Happy Quote, and not her call with Quest. Plaintiff posits that because Quest would be subject to personal jurisdiction if it manufactured and mailed a defective product into Pennsylvania and was sued for negligence, it is

5

therefore also subject to specific personal jurisdiction because of Quest's alleged marketing conduct. ECF No. 25 at 9. But this analogy is inapt: Quest did not manufacture or mail a product into Pennsylvania, nor did it place any call into Pennsylvania or to Plaintiff. Plaintiff's reliance on *Ford* fails to establish that Quest deliberately targeted Plaintiff or any Pennsylvania residents.

### B. Plaintiff's Evidence Does Not Support Specific Personal Jurisdiction Or Jurisdictional Discovery

Plaintiff submits evidence that is (i) inaccurate or misleading and (ii) not relevant or sufficient as to the question of specific personal jurisdiction. This Court should find that Plaintiff has failed to establish a *prima facie* case of specific jurisdiction or even to cite evidence sufficient to warrant jurisdictional discovery.

#### i. Plaintiff's Evidence Does Not Establish Personal Jurisdiction

Plaintiff attempts to shore up her bid for personal jurisdiction with new evidence that "Plaintiff spoke with a Quest Health agent who asked the Plaintiff on their own accord if she was in Pennsylvania" and that the Quest agent "went so far as to ask me what the weather was like in Pennsylvania." ECF No. 25 at 3–4; *see also* Murch Decl., ECF No. 25-2 ¶¶ 13, 16 (asserting that "[w]ithout any prompting," "the first human Quest [] employee with whom [Plaintiff] spoke asked [her] if [she] was from Pennsylvania…."). These supposed facts are demonstrably incorrect. As the attached Declaration of Rhiannon Sullivan establishes, based on a review of a recording of the call between a Quest representative and the purported plaintiff, at no time did Quest's representative ask Plaintiff if she was from Pennsylvania, how the weather was in Pennsylvania, or say anything to suggest that she knew Plaintiff was from Pennsylvania. Declaration of Rhiannon Sullivan, attached hereto as Ex. A, ¶¶ 4, 5.[2]

---

[2] Courts in the Third Circuit permit parties to submit declarations along with a reply brief to refute a plaintiff's evidence on a motion under Rule 12(b)(2). *See, e.g.*, *Bombardier Transp. Holdings USA, Inc. v. United Chemi-Con, Inc.*, No. 2:16-cv-01903, 2018 U.S. Dist. LEXIS 47075, at *21 (W.D. Pa. Mar. 22, 2018).

Plaintiff further contends that Quest is subject to specific personal jurisdiction because Quest "has at least two sales employees in Pennsylvania," Kevin Withers and Madison Dew. ECF 25-2 ¶ 19. But as the LinkedIn pages Plaintiff attaches to her Opposition show and as the Declaration of Rhiannon Sullivan confirms, both Mr. Withers and Ms. Dew became Quest employees *after* October 2, 2024, the date of the last of the alleged phone calls at issue.[3] Because Mr. Withers and Ms. Dew were not Quest employees on the date of Plaintiff's alleged injury, there is no possible way Plaintiff can establish that her injury arises from Mr. Withers's and Ms. Dew's presence in Pennsylvania. Plaintiff's Declaration does not remotely establish Quest's "purposefully directing" its activities at residents of the forum state and that Plaintiff's claims arise from any such activities. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d at 102–03.

### ii. This Court Should Not Permit Jurisdictional Discovery

Plaintiff has not alleged or adduced facts sufficient to warrant jurisdictional discovery. "A court has discretion to allow discovery when considering a motion to dismiss for lack of personal jurisdiction." *Streamlight, Inc. v. ADT Tools, Inc.*, No. 03-1481, 2003 WL 22594316, at *4 (E.D. Pa. Oct. 9, 2003) (citing *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). Jurisdictional discovery is warranted, however, only when "the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state[.]'" *Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022) (quoting *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010)). Plaintiff has fallen far short of this standard. The evidence she has presented does not come close to showing that (1) Quest engaged in activity that

---

[3] Mr. Withers became an employee of Quest on November 4, 2024, and Ms. Dew became a Quest employee on February 17, 2025. Declaration of Rhiannon Sullivan (Ex. A) ¶ 9.

amounted to a deliberately targeting of Pennsylvania residents, or (2) her alleged injury, two calls she alleges she received from Happy Quote, arises from any such activities. Accordingly, jurisdictional discovery should not be permitted.

### C. Plaintiff Fails to Allege Vicarious Liability

This Court may also dismiss this action as to Quest under Rule 12(b)(6) because Plaintiff has not alleged facts that would establish that Happy Quote was Quest's agent. Plaintiff fails to allege any facts or identify any provisions in the Lead Generation Agreement that establish Quest maintained control over Happy Quote such that it was Quest's agent. Nothing has been alleged to show Happy Quote was anything more than an independent contractor, as the Lead Generation Agreement dictates. *See* ECF No. 9, *passim*. Happy Quote was not authorized to sell Quest's products. *See* ECF No. 19-2, *passim*. Happy Quote pursued leads and transferred certain calls to Quest. *Id* § 2.1. Nothing in the Amended Complaint or the Lead Generation Agreement suggests that Quest dictated who Happy Quote called or provided Happy Quote with scripts for those calls, nor does Plaintiff allege facts suggesting that Quest directed Happy Quote to use an artificial voice. Plaintiff does not contest any of that. Simply alleging, without any supporting facts, that Happy Quote made the calls "at Quest's" direction is not enough. ECF No. 9 ¶ 27. A singular conclusory allegation does not meet federal pleading standards.

A judicial decision issued after Quest filed its Motion to Dismiss demonstrates why this Court should grant Quest's motion to dismiss: *Paul Span* v. *LendingTree, LLC*, No. 23-cv-00071, ECF No. 63 (C.D. Cal. Mar. 18, 2025), attached hereto as Exhibit B. On facts analogous to those alleged in Plaintiff's Amended Complaint, the *LendingTree* Court found that LendingTree, as the alleged principal, did not have an agency relationship with the telemarketing company that placed the call at issue, and thus that LendingTree could not be liable under the TCPA based on vicarious liability. *Id.* The facts integral to the decision are also alleged here in Plaintiff's Amended

8

Complaint, in contrast to the alleged facts in the authorities Plaintiff cites, which are not alleged here. In *LendingTree*, the court found that there was no vicarious liability because the alleged agent was an independent business that used its own equipment, set its own hours, and only received payment if one of the telemarketers actually made a sale. *Id.* at 7. The Lead Generation Agreement and facts alleged in the Amended Complaint are analogous. No well pleaded facts alleged in the Amended Complaint would establish that Happy Quote called Plaintiff at Quest's direction, that Quest controlled Happy Quote's calling activities, or that Happy Quote was not an independent business. *Id*. at 8. *LendingTree* persuasively demonstrates that Plaintiff has failed to allege facts sufficient to establish agency and vicarious liability.

Rather than allege facts supporting vicarious liability, Plaintiff proposes illogical interpretations of contract language in the Lead Generation Agreement, whose terms are not ambiguous. ECF No. 25 at 17. "When contractual language is clear and unambiguous, the interpretation and construction of contracts is a matter of law for the courts." *Id*. (quoting *Claman v. Popp*, 279 P.3d 1003, 1013 (Wyo. 2012)). "Whether a contract is ambiguous is a matter of law for the court to decide, and disagreement among the parties to a contract as to the contract's meaning does not mean that contract is ambiguous." *Id*. (quoting *Claman v. Popp*, 279 P.3d at 1013). Under Wyoming law, which governs the Lead Generation Agreement, "[a]n interpretation of a contract begins with an attempt to ascertain the parties' intent as evidenced by the specific language of the agreement." *Van Vlack v. Van Vlack*, 537 P.3d 751, 757 (Wyo. 2023) (citing *Hofhine v. Hofhine*, 330 P.3d 242, 245 (Wyo. 2014)). Plaintiff's attempt to twist unambiguous language in each of the following provisions fails to show Quest had control over Happy Quote. ECF No. 25 at 17.

- "Client has the right to reject any Lead pursuant to Section 4.2 of the Agreement if such Lead does not meet the following requirements or as otherwise set forth in Section 4.2 of the Agreement: To be determined in subsequent Insertion Orders."

The Lead Generation Agreement dictates that Happy Quote provides leads to Quest. Quest can either utilize those leads or, on a case-by-case basis, determine that certain leads do not fit the agreed-upon criteria. The fact that Quest sets any sort of standards for the deliverable is not indicia of control and the fact that Quest can reject deliverables that do not meet those standards, again, is not indicia of control. Instead, it allows Happy Quote to sell leads to Quest, which Quest can accept and purchase or reject and not purchase. Plaintiff does not cite any caselaw to support her argument that such a provision or relationship indicates control as to provide an agency relationship.

- "If Happy Quote submits leads to Client that Client believes do not meet the approved leads qualification criteria, Client will send such leads along with their grounds for rejection to Happy Quote. These proposed rejections will be processed on weekly basis and must be submitted no later than 2 days after the close of the calendar week."

The same rationale applies to this language. Moreover, the fact that Quest will provide information on why Quest chose not to purchase certain leads allows Happy Quote to adjust the information it seeks from potential leads—in any way it sees fit—in order to increase the number of leads Quest purchases from Happy Quote. Rather than control, this provision allows Happy Quote and Quest the flexibility to engage in a give and take, providing Happy Quote the leeway to determine what methods provide the best result. This provision does not, as Plaintiff posits, "create[] an ongoing mechanism for Quest [] to enforce compliance with its expectations." ECF No. 25 at 17. Again, Plaintiff does not cite any cases supporting its position.

- "Client shall be entitled to offset any amounts owed pursuant to this Section from unpaid or future Lead Fees."

First, indemnification provisions are not indicia of control or agency. *See Ranger Nationwide, Inc. v. Nat'l Indem. Co.*, 658 F. Supp. 103, 109 (D. Del.), *aff'd sub nom. Nat'l Indem. Co. v. Am. Cas. Co.*, 833 F.2d 306 (3d Cir. 1987) (rejecting argument that liability was vicarious, where liability was purely contractual based on an indemnification provision). Second, this language is the tail end of a single sentence that is part of a paragraph long indemnification provision, which is part of an article that provides indemnification for both Happy Quote and Quest under certain situations. Plaintiff's cherry-picked language that does not support her argument that Happy Quote was Quest's agent.

- "Provide Happy Quote with data regarding the performance of Happy Quote Leads including Cost Per Acquisition in a timely manner upon request."

This provision, rather than illustrating Quest had control over Happy Quote, shows that Happy Quote could determine whether and when it would receive performance data, *i.e.*, upon Happy Quote's request. In line with the other provisions discussed here, the Lead Generation Agreement shows that Happy Quote was the ruler of its own success in the relationship between Quest and Happy Quote. If Happy Quote wanted to improve the number of successful leads accepted and purchased by Quest, Happy Quote had the prerogative to request performance data and then choose to use that data, or not, to modify the manner of its lead generation.

- "Neither Happy Quote nor Client may assign or transfer this Agreement… without the written consent of the non-assigning party, which consent shall not be unreasonably withheld, conditioned, or delayed."

As is clear from the plain language, this provision applies equally to both parties rather than illustrating one party had control over the other. Nothing about this provision demonstrates the type of "control" necessary to establish agency.

- "The selection of counsel, the conduct of the defense of any lawsuit… and any settlement shall solely be within the indemnifying Party's control, provided that the indemnified Party shall have the right to participate… at its expense."

11

Like the other indemnity provision, this is irrelevant to the question of control, agency, and/or vicarious liability.

Finally, the cases Plaintiff cites regarding actual and apparent authority, as well as ratification, are off point. *Havassy v. Keller Williams Realty* and the other authorities Plaintiff cites in her Opposition, ECF No. 25 at 18–20, are inapposite here because, as the allegations of the Amended Complaint and the Lead Generation Agreement themselves show, Happy Quote had no authority to act on Quest's behalf. In *Havassy*, the alleged agents "used KWRI's name when they called potential customers and identified themselves as associated with 'Keller Williams.'" ECF No. 25 at 18 (quoting No. 21-4608, 2024 WL 1640984, at *6–7 (E.D. Pa. Apr. 16, 2024)). Plaintiff does not allege that Happy Quote used Quest's name whatsoever. Plaintiff, in her Reply, now asserts that Happy Quote called her "to market Quest Health's products and services[.]" *Id*. at 19. But the Amended Complaint does not allege that Happy Quote said anything to Plaintiff to market Quest's products; Happy Quote is alleged instead to have used the name "U.S. Medical Supplies," which she alleges is an alias for Happy Quote. ECF No. 9 ¶¶ 28, 34. Nowhere does Plaintiff allege that Happy Quote used Quest's name. These alleged circumstances, markedly different from those in *Havassy* and the other cases cited by Plaintiff, negate Plaintiff's apparent authority theory because she alleges no basis on which she might have reasonably believed that Happy Quote had the authority to bind Quest.

Instead, the case at hand is akin to *Doyle v. Matrix Warranty Sols., Inc*., 679 F. Supp. 3d 42, 47 (D.N.J. 2023), where the court found the complaint failed to allege facts supporting actual authority. There, the complaint did not describe any communications or any control by the principal of the alleged agent. *Id*. The same is true here. The *Doyle* court also found no apparent authority because there was no allegation that the plaintiff knew anything about the principal from

the phone call and, therefore, there could have been no basis for the plaintiff to "reasonably believe" the agent was acting on behalf of the principal. *Id.* The same is true here. Plaintiff alleges no basis on which she could have believed that Happy Quote had the authority to act on Quest's behalf. To the contrary, there is no allegation that Happy Quote's representative even mentioned Quest, and Plaintiff's allegation that her call was transferred to Quest so that Quest could act on its own behalf defeats her apparently authority theory.

III. <u>CONCLUSION</u>

The Court should grant Quest's Motion to Dismiss and issue an order dismissing Quest from this action.

**GREENBERG TRAURIG, LLP**

Respectfully submitted,

Dated: May 1, 2025

*/s/ Brian T. Feeney*
Brian T. Feeney
1717 Arch Street, Suite 400
Philadelphia, PA 19103
215.988.7812
brian.feeney@gtlaw.com

*Attorney for Defendant Quest Health Solutions, LLC*

## **CERTIFICATE OF SERVICE**

I, Brian T. Feeney, hereby certify that on this 1st day of May, 2025, I caused a true and correct copy of the foregoing Reply Brief to be served on all counsel of record via the Court's electronic filing system.

*/s/ Brian T. Feeney*
Brian T. Feeney, Esq.