# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

PAUL SAPAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

LENDINGTREE, LLC,

Defendant.

Case No. 8:23-cv-00071-JWH-DFM

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 48]**

Before the Court are four motions:

- the motion of Defendant LendingTree, LLC for summary judgment on the claim for relief asserted by Plaintiff Paul Sapan;[1]
- Sapan's motion for class certification;[2]
- LendingTree's motion to stay the Class Certification Motion;[3] and
- the parties' joint motion to modify the Court's Scheduling Order.[4]

The Court concludes that these matters are appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition of the Motions, the Court **GRANTS** LendingTree's Motion for Summary Judgment and **DENIES** all remaining Motions **as moot**.

## I. PROCEDURAL BACKGROUND

Sapan commenced this action in January 2023.[5] In his Complaint, Sapan asserts one claim for relief under the Telephone Consumer Protection Act of 1991 (the "TCPA"), 47 U.S.C. §§ 227 *et seq*, on behalf of himself and all other similarly situated individuals.[6] Sapan filed an Amended Complaint in August 2023,[7] and LendingTree moved to dismiss the Amended Complaint in

---

[1] Def.'s Mot. for Summ. J. (the "Summary Judgment Motion") [ECF No. 48].

[2] Pl.'s Mot. to Certify Class (the "Class Certification Motion") [ECF No. 49].

[3] Def.'s Mot. to Stay Pending Court's Ruling on the Summary Judgment Motion (the "Stay Motion") [ECF No. 50].

[4] Joint Mot. to Modify the Court's Scheduling Order (the "Joint Motion") [ECF No. 52].

[5] *See* Compl. [ECF No. 1].

[6] *See generally id.*

[7] *See* First Am. Compl. (the "Amended Complaint") [ECF No. 26].

September 2023.[8] The Court denied LendingTree's Motion to Dismiss in November 2023.[9]

LendingTree filed its instant Summary Judgment Motion in January 2025, and Sapan filed his instant Class Certification Motion the same month.[10] In view of the Summary Judgment Motion, LendingTree also filed the instant Motion to Stay Class Certification,[11] and the parties filed a Joint Motion to modify the scheduling order.[12]

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The substantive law determines the facts that are material. *See id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are "irrelevant or unnecessary" are not counted. *Id.* A dispute

---

[8] *See* Def.'s Mot. to Dismiss Case (the "Motion to Dismiss") [ECF No. 27].

[9] *See* Minute Order re Hearing re Def.'s Mot. to Dismiss Case [ECF No. 35].

[10] *See* Summary Judgment Motion; Class Certification Motion.

[11] *See* Stay Motion.

[12] *See* Joint Motion.

-3-

about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under that standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *See id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the nonmoving party's case. *See id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *See Celotex*, 477 U.S. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). The non-moving party must make that showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory Committee Notes, 2010 Amendment, to

Fed. R. Civ. P. 56. Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Rule 56(c) of the Federal Rules of Civil Procedure, which requires that they "be made on personal knowledge, set forth facts that would be admissible evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein." *Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (noting that hearsay statements do not enter into the analysis on summary judgment).

### III. STATEMENT OF UNCONTROVERTED MATERIAL FACTS

The material facts set forth below are sufficiently supported by admissible evidence, and they are uncontroverted. Those facts are "admitted to exist without controversy" for the purpose of deciding LendingTree's Summary Judgment Motion. *See* Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

LendingTree operates a pay-per-call program that permits marketing affiliates who place telemarketing calls to consumers to transfer those calls to LendingTree.[13] The marketing affiliates are third-party contractors, and they are not required to transfer calls exclusively to LendingTree.[14] LendingTree does not restrict its affiliates from calling into California, nor does it provide any oversight of its marketing affiliates.[15]

In January 2019, LendingTree received a telephone call as part of its pay-per-call program.[16] LendingTree's employee, April Ellis (now a former

---

[13] Joint Statement [ECF No. 48-2] No. 8.
[14] *Id.* at No. 13.
[15] *Id.* at Nos. 35 & 42.
[16] *Id.* at Nos. 1 & 7.

-5-

employee), answered the call.[17] She spoke to the transferring caller for 39 seconds, and she did not speak to Sapan.[18] The call disconnected after Ms. Ellis was introduced to Sapan, and Ms. Ellis did not attempt to call Sapan back.[19]

Following that call, Sapan received nine calls from a telephone number that was listed as 949-312-4532.[20] The entity placing those calls was identified as National Mortgage Advantage, and Sapan believes that it was trying to reconnect him to LendingTree.[21] LendingTree does not operate under the name "National Mortgage Advantage," and it has no relationship with any entity known as "National Mortgage Advantage."[22]

## IV. ANALYSIS

The primary dispute in this case is whether LendingTree could be liable for the calls that were placed to Sapan.[23] Under Ninth Circuit precedent, LendingTree cannot.

The TCPA makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Per Federal Communications Commission

---

[17] *Id.* at No. 2.

[18] *Id.* at Nos. 4 & 5.

[19] *Id.* at No. 6.

[20] *Id.* at Nos. 47 & 48.

[21] *Id.* at No. 53.

[22] *Id.* at Nos. 18 & 20.

[23] *See generally* Summary Judgment Motion; Pl.'s Opp'n to the Summary Judgment Motion (the "Opposition") [ECF No. 56].

regulations, "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules & Regs. Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 (1995). To decide whether an agency relationship exists, a district court must apply traditional tort principles. *See Kristensen v. Credit Payment Servs. Inc.*, 897 F.3d 1010, 1014 (9th Cir. 2018).

The Ninth Circuit has held that marketing affiliates like those in LendingTree's pay-per-call program do not constitute agents for the purpose of TCPA liability. In *Jones v. Royal Administration Services, Inc.*, 887 F.3d 443 (9th Cir. 2018), the defendant vehicle service contract provider entered into a marketing contract with telemarketer AAAP. *See id.* at 446. Through that program, AAAP would first "sell the concept of a vehicle service contract to the consumer." *Id.* (alterations adopted). Then, AAAP would "pick a particular service plan from one of their many vendors" and transfer the consumer to that vendor. *Id.* The Ninth Circuit held that the defendant could not be held vicariously liable for AAAP's TCPA violations because AAAP was an "independent business" that "provided its own equipment, set its own hours, and only received payment if one of its telemarketers actually made a sale" and because the defendant "did not specifically control the calls" to the plaintiff. *Id.* at 453.

As in *Jones*, here no basis exists upon which LendingTree could be vicariously liable for the calls placed by National Mortgage Advantage to Sapan. Indeed, Sapan's only argument to the contrary appears to be his assertion that "National Mortgage Advantage" is a "fake name used by one of the telemarketers hired by LendingTree."[24] Such bold, unsupported assertions are insufficient to create a genuine dispute of fact. Moreover, even if Sapan is correct that "National Mortgage Advantage" is a fake name used by one of

---

[24] *See* Opposition 4:13–16.

LendingTree's marketing affiliates, it is undisputed that those calls were not made at LendingTree's direction, that LendingTree did not influence or control its marketing affiliates, and that the marketing affiliate was an independent business.[25] *See Jones*, 887 F.3d at 453.

In sum, there is no genuine dispute regarding whether LendingTree could be vicariously liable for any TCPA violation committed by the entity that called Sapan, whether or not that entity was one of LendingTree's marketing affiliates. *See id.* Accordingly, the Court **GRANTS** LendingTree's Summary Judgment Motion.

## V. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. LendingTree's Summary Judgment Motion [ECF No. 48] is **GRANTED**.

2. Sapan's Class Certification Motion [ECF No. 49], LendingTree's Stay Motion [ECF No. 50], and the Joint Motion to modify the scheduling order [ECF No. 52] are each **DENIED as moot**.

3. Judgment shall issue accordingly.

**IT IS SO ORDERED.**

Dated: March 18, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[25] *See* Joint Statement Nos. 9, 19, 20, & 26.

-8-